UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

IN RE:      JEFFREY LYNN WHITWELL,            Case No. 08-32896

Debtor.                                        Chapter 13

**ORDER SUSTAINING CREDITOR'S OBJECTION TO CONFIRMATION
AND GIVING DEBTOR 30 DAYS TO AMEND THE PLAN**

**Factual Background**

The debtor filed his Chapter 13 petition on December 23, 2008. On January 7, 2009, he filed a Chapter 13 plan in which he proposed to make monthly payments of $517.46 over the life of a 36-month plan. The plan also indicated that the debtor was unemployed. His Schedule I indicated that he was employed, as of the petition date, as a truck driver, making a net income of $1,772.62 per month. The Schedule I also reflected, on Line 13, "Other monthly income," a monthly "structured settlement annuity" of $598.

On February 20, 2009, the standing Chapter 13 trustee filed an objection to confirmation of the debtor's plan. The parties resolved this objection by stipulation, and agreed that the debtor would file an amended plan. On March 27, the debtor filed that amended plan. In this new plan, the debtor proposed to make plan payments of $517.46 for the first three months, and then increase those payments to $598.00 monthly for the remainder of the plan. In the space the plan provided for the debtor to list his employer, the debtor

1

listed, "Aegon Structured Settlements," and indicated that he received payments from this entity monthly.

As it turns out, the debtor did not work for Aegon Structured Settlements. Rather, the debtor had, years earlier, received a structured personal injury settlement. The defendants to that settlement funded the settlement payments by purchasing an annuity contract through Aegon Structured Settlements. According to the settlement, the debtor was to receive $598 per month from Aegon.

On April 7, 2009, J.G. Wentworth, SSC filed an objection to confirmation of the debtor's amended plan. J.G. Wentworth argued that in June 2004, the debtor had sold to Wentworth his right to receive 180 of those structured settlement payments. J.G. Wentworth argued, therefore, that the debtor proposed to use money he did not own–the structured settlement, or "annuity," payments–to fund his Chapter 13 plan. Because Wentworth, not the debtor, owned those payments, Wentworth objected to confirmation.[1]

In his response to the objection, the debtor argued that creditor J.G. Wentworth, SSC did not having standing to object to confirmation. He stated that the entity to whom he had sold the annuity payments was 321 Henderson,

---

[1] A week later, the trustee also filed an objection to confirmation of the debtor's amended plan, on the grounds that the plan proposed to pay $0 to unsecured creditors when a liquidation analysis showed that unsecured creditors could receive in excess of $94,000 in a Chapter 7, and on the grounds that J.G. Wentworth had objected. The trustee has withheld argument on his objection pending resolution of J.G. Wentworth's objection.

not J.G. Wentworth.  He also argued that 321 Henderson was an "unsecured creditor," because it could not "exercise its contractual right to receive the 180 monthly stream of income annuity payments until December 28, 2008," five days *after* the debtor filed his Chapter 13 petition.  The debtor argued, therefore, that the annuity payments were property of the bankruptcy estate, and not the property of J.G. Wentworth, SSC (or 321 Henderson).

At the hearing on the objection, the Court asked the parties to provide further briefing on the relationship between 321 Henderson and J.G. Wentworth, SSC, as well as to provide any case law which might support their respective positions.  Having reviewed these filings and the arguments made at the hearing, the Court sustains J.G. Wentworth's objection.

## Analysis

A.  J.G. Wentworth, SSC Has Standing to Object to Confirmation of the Debtor's Plan.

J.G. Wentworth, SSC attached to its objection to confirmation the transfer document by which the debtor transferred the annuity payments.  The document is entitled, "Purchase Agreement," and is between the debtor and "321 Henderson Receivables Limited Partnership, a Nevada Limited Partnership, its successors and/or assigns."

In response to the Court's request for more information on the relationship between the objecting party, J.G. Wentworth, SSC, and the purchasing party, 321 Henderson Receivables Limited Partnership, J.G.

3

Wentworth provided the Court with three documents.  One is a document entitled "Unanimous Written Consent of the Partners of 321 Henderson Receivables Limited Partnership, a Nevada Limited Partnership."  This document, dated December 27, 2005, demonstrates that the "partners" that make up 321 Henderson Receivables Limited Partnership are J.G. Wentworth SSC Limited Partnership and J.G. Wentworth Structured Settlement Funding II, LLC.  The second document is a plan of conversion, showing that on December 31, 2005, the entity "321 Henderson Receivables Limited Partnership" converted to an entity called "321 Henderson Receivables Origination, LLC."  The third document is an organizational chart, which shows that under the umbrella organization "J.G. Wentworth, LLC," there are a number of limited liability corporations and partnerships bearing variations on the names "J.G. Wentworth" and "321 Henderson."

      These documents convince the Court that the objecting party, J.G. Wentworth, SSC, has an ownership interest in 321 Henderson Receivables Limited Partnership, the entity which purchased the debtor's annuity payments in June of 2004.  As such, J.G. Wentworth, SSC has standing to object to the debtor's proposal to fund his plan with those payments.

B.  <u>The Debtor Sold the Right to Receive the Annuity Payments to 321 Henderson.  The Transfer Did Not Constitute an Executory Contract, But Rather an Outright Sale.  Accordingly, the Debtor Does Not Own the Payments, and Cannot Use Them to Fund a Chapter 13 Plan.</u>

Assuming that J.G. Wentworth, SSC had standing to object to confirmation of his plan, the debtor also argued that when he assigned the annuity payments to 321 Henderson back in June of 2004, he did so by means of an executory contract.  Under this contract, he argued, 321 Henderson could not exercise its right to "start receiving" the annuity payments until December 28, 2008, five days *after* the debtor filed his Chapter 13 petition.  Accordingly, the debtor argued, 321 Henderson did not own the annuity payments as of the petition date–the debtor did.  And as a result, he argued that the debtor's Chapter 13 estate currently owns those payments.

Neither the facts nor the law support the debtor's argument.  As the Court noted above, the document by which the debtor assigned his rights to the annuity payments is entitled "Purchase Agreement."  While this fact, in and of itself, is not dispositive of whether the agreement was executory in nature, it confirms what other provisions of the contract demonstrate.  Under the agreement, the debtor agreed to "sell, transfer and assign" to 321 Henderson "all" of his rights to receive "all or a portion of the" annuity payments.  In exchange, 321 Henderson agreed to pay the debtor $26,208 at the time that both parties signed the agreement and 321 Henderson "completed [its] internal process."  Upon the signing of the agreement, the debtor was to deliver to the

annuity company a letter stating that the annuity company was to make all payments to 321 Henderson. The agreement gave the debtor the right to cancel the contract without penalty, as long as he did so within twenty-one (21) days of the date he received the $28,208 payment from 321 Henderson.

The agreement bears the signature of the vice president of operations for 321 Henderson, and the signature of the debtor. The date on the agreement is June 11, 2004. A notary public witnessed the signing of the agreement. According to the terms of the agreement, then, 321 Henderson would have paid the debtor the $28,208 after June 11, 2004, and the debtor would have provided the annuity company with a letter directing it to make the annuity payments to 321 Henderson. Once those obligations were performed, the sale was consummated, and significantly, the debtor has not argued that any of those tasks remain to be performed by either side. This is important, given the case law regarding the nature of executory contracts.

J.G. Wentworth correctly points out that the Bankruptcy Code does not define the term "executory contract." Both the Supreme Court and the Seventh Circuit have defined the term, however, and their definition demonstrates that the purchase agreement involved in this case was not an executory contract. In N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 522 n.6 (1984), the Supreme Court stated,

> The Bankruptcy Code furnishes no express definition of an executory contract, see 11 U.S.C. § 365(a), but the legislative history to § 365(a) indicates that Congress intended the term to

mean a contract "on which performance is due to some extent on both sides." H. R. Rep. No. 95-595, p. 347 (1977), see S. Rep. No. 95-989, p. 58 (1977).

The Seventh Circuit adopted this same definition, and expanded on it, in its 2006 decision in <u>Dick ex rel. Amended Hilbert Residence Maintenance Trust v. Conseco</u>, 458 F.3d 573, 577-578 (7th Cir. 2006). In that decision, the Seventh Circuit explained,

> Although the Bankruptcy Code does not define "executory contract," we have held an executory contract for § 365 purposes "is a contract on which performance remains due to some extent on both sides." Recognizing that the literal definition would render nearly all agreements executory, we determined that in order to effectuate Congress's intent, § 365 should be applied only "to contracts where significant unperformed obligations remain on both sides." In other words, a contract is executory if each party is burdened with obligations which if not performed would amount to a material breach.

<u>Id.</u> (citations omitted).

The debtor argues that because the annuity company was not due to make the first annuity payment until December 28, 2008, the purchase contract was "executory." It was the *annuity company*, however, which had the obligation to make that first payment, and the *annuity company* was not a party to the 2004 purchase agreement. The two sides to the 2004 purchase agreement were the debtor and 321 Henderson. The debtor's obligation under the contract was to direct the annuity company to make the annuity payments to 321 Henderson. 321 Henderson's obligation under the contract was to pay the debtor the $28,208. Each of those parties performed their contractual

obligations. Thus, as of the date that the debtor filed his Chapter 13 petition, he did not have any unperformed obligations, and 321 Henderson did not have any unperformed obligations. The annuity company may have had an as-yet unperformed obligation, but the annuity company was not a party to the purchase agreement–and its unperformed obligation was to 321 Henderson, not to the debtor.

The debtor's argument ignores the fact that what he sold to 321 Henderson was his *right* to receive the annuity payments. Once he consummated that sale, he no longer had the right to receive those payments, whether the payments were scheduled to start in 2005 or 2015. On the date he filed his petition–December 23, 2008–he no longer owned the right to receive the payments. 321 Henderson owned that right, and it owned that right the minute the purchase was consummated in 2004.

C.   Conclusion

For all of the reasons stated above, the Court concludes that J.G. Wentworth, SSC has standing to object to confirmation of the debtor's Chapter 13 plan. The Court further concludes that J.G. Wentworth's objection is meritorious, because the debtor proposes to fund his Chapter 13 plan, in part, using annuity payments that J.G. Wentworth, and not the debtor, owns. Accordingly, the Court hereby **SUSTAINS** J.G. Wentworth, SSC's objection to confirmation of the debtor's Chapter 13 plan, and gives the debtor thirty (30) days from the date of this Order to file an amended plan. The Court further

**GRANTS** J.G. Wentworth, SSC's motion to set aside the April 23, 2009 wage order directing Aegon Structured Settlements to forward $598 per month to the Chapter 13 trustee,[2] and **VACATES** that April 23, 2009 wage order.

Counsel for J.G. Wentworth shall serve a copy of this Order by mail to all interested parties who were not served electronically.

ENTERED: July 30, 2009

                                        /s/ Pamela Pepper
                              UNITED STATES BANKRUPTCY JUDGE

---

[2] On May 14, 2009, the trustee filed a response indicating that he did not object to the motion to set aside the wage order.